THOMAS C. WALBRIDGE, RESPONDENT, v. EDWARD D. JAMES, APPELLANT.

*Sale under foreclosure — fees of referee on — fees, when the sale is ineffectual.*

A referee, appointed to sell property under a decree of foreclosure, is entitled to the same fees and commissions as a sheriff would be entitled to receive had he made the sale, provided that such fees and commissions shall not exceed in the aggregate fifty dollars.

Where a sale is, for any reason ineffectual, the referee is entitled to fifty cents for receiving and entering the decree, and two dollars for advertising the property for sale.

APPEAL by the defendant, Edward D. James, from so much of an order made at a Special Term held at Ballston Spa., Saratoga county, as requires the defendant to pay the sum of ninety dollars for fees of a referee for selling lands under a decree of foreclosure. Plaintiff moved, at Special Term, for an order fixing and determining the amount due and to be allowed, for fees, services and disbursements of Charles H. Tefft, Jr., and Augustine W. Shepherd, as referees in the above-entitled action.

The action was brought to foreclose a mortgage, and the usual decree of foreclosure was entered on the 21st day of October, 1874. Said Tefft was, by said decree, directed to sell the premises according to law and the rules and practice of the court. The amount decreed to be paid to the plaintiff was the sum of $8,456.21.

On the 22d of October, 1874, he caused an advertisement of sale to be inserted in the newspaper known as The Saratogian, for a sale on the 4th day of December, 1874, and continued to publish such notice in said paper until the twenty-first of November that year, when defendant James perfected an appeal, with the proper undertaking, for a stay of proceedings. Judgment of the General Term, affirming the judgment of the Special Term, was entered July 9, 1875. The referee commenced to publish a notice of sale on the second day of July, and continued the same in the paper before mentioned until July 24, 1875. On the 23d day of July, 1875, defendant James appealed to the Court of Appeals from the judgment of the General Term, filed the requisite undertaking, and gave notice thereof, staying plaintiff's proceedings. The

judgment of the General Term was affirmed by the Court of Appeals upon such appeal, and judgment upon its decision duly entered on the 21st day of June, 1876. On the last-mentioned day, the referee again advertised the premises for sale on the 4th day of August, 1876. The referee continued to publish such notice in said paper until the 4th day of August, 1876, when, as stated in the affidavit of the plaintiff's attorney, at the solicitation of the defendant, it was again discontinued and further proceedings suspended.

On the 5th day of April, 1877, said referee again advertised said premises in said newspaper for sale on the 18th day of May, 1877, and at that time the premises were sold by the referee to the defendant, Edward D. James, he paying, at the time of the sale, twenty-five per cent of the purchase-money, according to the terms of such sale, and he was to pay the balance thereof on the 28th day of May, 1877. The referee then prepared and tendered the deed, and attended at the place of the sale for the receipt of the remaining seventy-five per cent, but said defendant refused to complete the purchase. On motion of the plaintiff to this court, at Special Term, on the 14th of June, 1877, defendant was required to complete his purchase within a time named therein, or, in default thereof, the said referee was required to re-sell said premises at the expense of the defendant. The defendant failing to complete such purchase by the time allowed by such order, on the 21st day of June, 1877, said referee again caused said premises to be advertised for sale on the 3d day of August, 1877. On August 3, 1877, said sale was further adjourned by said referee, at the request of said defendant, to the 31st day of August, 1877. On the 31st day of August, 1877, said sale was adjourned by the referee until the 14th day of September, 1877. The sale was postponed again by reason of an injunction restraining the sale, but which allowed the referee to adjourn pending the motion for a permanent injunction in another action which said defendant commenced against plaintiff.

September 8, 1877, in an *ex parte* application to the Special Term, Charles H. Tefft, Jr., not being able to continue in his office as referee, Augustine N. Shepherd was duly appointed referee in his stead, with power to complete the duties given by the original decree. On September 14, 1877, said Shepherd, as referee,

attended at the place of sale in pursuance of said notice of adjournment, and further adjourned said sale until the 19th day of October, 1877. Such motion for an injunction remaining still pending on October 19, 1877, said referee further adjourned said sale to the 27th day of October, 1877. The said motion for a stay was denied October 25, 1877. On October 27, 1877, said sale was further adjourned, at the request of the said defendant, until the 12th day of November, 1877. On the 12th day of November, 1877, said referee sold the premises to H. Kembal, Jr., for $5,700, of which amount he paid down $1,425, that being the amount to be paid down by the terms of the sale.

The terms of sale required the purchaser to complete his purchase the 26th day of November, 1877, by paying the balance of his bid and accepting a deed of the premises on that day at the office of plaintiff's attorney. It was also provided by the terms of such sale that the notices and advertisements of such sale be continued to the twenty-sixth of November aforesaid, and that, if the purchaser should fail to complete his purchase, the premises should again be put up for sale to the highest bidder. Afterwards, and on application of said Kembal, it was agreed that said sale should be, and said sale was duly adjourned from the 26th day of November to the 3d day of December, 1877. Said Kembal having failed to comply with the conditions of sale on said 3d day of December, 1877, said referee again offered said premises for sale, and the same were sold to Thomas C. Walbridge, the plaintiff, for $5,700. That, on such last sale, the terms were cash, the deed to be delivered and payment made on the day of the sale. The several adjournments above noted were duly published and posted.

On the 4th day of December, 1877, the plaintiff and the said defendant James entered into an agreement, by which the plaintiff agreed to transfer his decree and his bid on or before January 15, 1878, on receiving the balance of the amount due on his decree and the amount of his taxable costs and disbursements in the action; and on January 14, 1878, said defendant, pursuant to such agreement, paid to the plaintiff $1,751.08, being the amount supposed to be due on the decree, except the legal fees of the referee and the expenses, including cost of advertising. And, by such agreement, it was provided that such fees and expenses were

to be paid as soon as finally adjusted by order of the court. This motion is made, pursuant to such agreement, to adjust and determine the amount of such expenses and fees.

*E. H. Benn,* for the appellant.

*John C. Hulbert.* for the respondent.

BOCKES, J.:

The question presented on this appeal is as to the amount which a referee is entitled to demand and have on making sale of premises under a decree of foreclosure.

In this case there were three sales of the mortgaged premises, all of which it appears were regularly made — the last one only having been consummated by the delivery of the deed. The causes which rendered the first two of them ineffectual, it is useless here to state. Twenty-five per cent of the purchase-money was paid in on each of the first two sales, both of which, as above stated, fell through. On the third sale the premises were struck off and sold for $5,700 cash, and the title passed. It seems that Mr. James took the benefit of the purchase, and, as is understood, had the benefit of the money paid in on the prior sales, he agreeing to pay and satisfy the referee's fees and expenses.

Briefly stated, the case stands the same as if Mr. James had been the purchaser at each sale, with a liability to pay and satisfy the proper and legal expenses of those sales — that is, what in law the referee was entitled to demand and receive for conducting them. No question is here made as to the allowance for disbursements. The learned judge at Special Term held that the referee was entitled to ten dollars fees, and twenty dollars commissions on each sale, amounting to ninety dollars in all. The allowances are challenged by the appellant James, who insists that a sum not exceeding ten dollars in all was allowable. The Special Term held that the referee was entitled to the same fees and commissions as the sheriff would have been entitled to had he made the sale, to wit, a sum for fees not exceeding ten dollars (Laws of 1847, ch. 280, § 77; 3 R. S., 222, § 93 [6th ed]); and commissions not exceeding twenty dollars in the aggregate (*Delavan* v. *Payn,* 8

Paige, 459); and that he was entitled to these allowances on each sale. It is probable that the attention of the Special Term was not called to the provision of the act of 1876, hereafter to be considered.

There is no statute declaring in terms the items allowable to a referee who makes a sale under a decree in foreclosure; but it has been decided at General Term, that by analogy, his services being the same as those of a sheriff in the same class of cases, he should have the same fees, with the limitations as to gross amount declared by law. This was held in *Innes* v. *Purcell* (2 N. Y. Sup. Ct. [T. & C.], 538.) In this case Judge DANIELS collated the provisions of the law then applicable to the question, and reached the conclusion, on a clear line of reasoning, that the measure of compensation for similar services by a sheriff and referee in making a sale under a decree of foreclosure was the same; and it was there decided that a referee was entitled to fees to be taxed at the same rate as were allowed to a sheriff for performing the same services. With this conclusion we are satisfied. Then what fees would the sheriff have been entitled to, had he performed the services here performed by the referee? Since the decision in the case of *Innes* v. *Purcell* (*supra*), a new statute has been enacted bearing on the question under consideration. (Laws of 1876, chap. 431, § 11, making an amendment of § 309 of the Code of Procedure.) It is there provided " nor shall a greater sum than $50 be charged by or allowed to any sheriff, referee, or other officer for his *fees, percentage or services* for any sale under a decree or judgment of foreclosure." This provision was in force when the sales in this case were had. Thus the limitation, then and now, stands at $50 (instead of $10 fixed by the former statute); but it expressly covers both fees and percentage. Now, in the case in hand, the referee was entitled to the same fees and percentage (commissions) as might be taxed for the same services had they been performed by the sheriff, not exceeding, in the aggregate, $50. Thus it seems that in this case the referee was clearly entitled, according to the decision in *Innes* v. *Purcell*, and under the limitation fixed by the act of 1876 above cited to $50 for the third and consummated sale, inasmuch as the taxable fees and percentage, or legal commissions, on that sale alone would

amount to the full sum of $50. But we are of the opinion that he can have commissions only on the consummated sale. He can have commissions only on such moneys as were actually or constructively received and paid over under the decree. The sum thus made from the sale is deemed to be the sum collected, and it is on that sum that his right to commissions attach. The twenty-five per cent paid in on the first two sales became, in this case, part of the $5,700 ultimately paid on the consummated sale. This latter sum was all that was ever made under the decree. The fact that one referee was substituted for another, during the process of executing the decree in this case, does not at all affect the question before us. There were, however, services performed by the referee on those first two sales, for which he was entitled to compensation the same as if he had been sheriff. It is supposed he was in effect, as regards fees and commissions, performing the duties of the sheriff in executing a judgment. Then let us suppose that, instead of the decree of sale, he had held as sheriff an execution, and had performed the services thereunder, which were performed in making the two ineffectual sales, what were the items of service for which the law would allow to him compensation ? Those fees would have been as follows : For receiving and entering the decree in his book, in analogy to entering an execution, fifty cents ; for advertising the property for sale, $2. Perhaps there may be some other item or items of fees given by some statute which has escaped our observation. Mileage is not allowable, for there is no such service to be performed in the class of cases under consideration. Nor can any allowance be here made for a report of sale on either of the two ineffectual sales, on the hypothesis that the report of sale takes the place of a sheriff's certificate of sale, for no report of sale was made on either of those sales ; nor for a deed to the purchaser, for no deed was given until given pursuant to the last and consummated sale. Besides the provision as to the sheriff is that the fee for the deed is to be paid by the grantee. Thus, it seems, there is the sum of $2.50 allowable against Mr. James on each of the two ineffectual sales; inasmuch as these fees were for services actually rendered, for which, under the circumstances of this case, he became liable. Thus, it seems, the referee

in this case was entitled to fifty-five dollars, and the order of the Special Term should be modified accordingly. But neither party should have costs either at Special Term or on the appeal. It should be here added, perhaps, that the decision in *Richards* v. *Richards* (21 Sup. Ct. Rep. [14 Hun], 25), is made with reference to the special statute applicable to the city and county of New York.

Order of Special Term modified so as to make the allowance to the referee fifty-five dollars, but without costs of the Special Term or of the appeal.

BOARDMAN, J.:

I think there was but one sale made; the others were not perfected, and that the fees should be fifty dollars as the extreme limit of the law of 1876.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.